UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL WALTER RODRIGUEZ,<br><br>    Petitioner-Defendant,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>    Respondent-Plaintiff. | Case No.: 17-cv-2411-GPC;<br>17-cr-00215-GPC<br><br>**ORDER DENYING PETITIONER'S MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255**<br><br>**[DKT. NO. 42.]** |

    Petitioner, Michael Walter Rodriguez, ("Petitioner") a federal prisoner proceeding pro se, filed a motion to vacate his federal sentence pursuant to 28 U.S.C. § 2255, alleging ineffective assistance of counsel and improper sentencing.[1] (Dkt. No. 42.) The United States of America ("the Government") opposed Petitioner's motion under § 2255, alleging that Petitioner failed to establish ineffective assistance of counsel and waived his right to collaterally attack his sentence. (Dkt. No. 54.)

    For the following reasons, the Court **DENIES** Petitioner's § 2255 Petition. The Court also **DENIES** an evidentiary hearing and **DENIES** a certificate of appealability.

---

[1] On January 18, 2018, Petitioner filed a supplemental document in support of his claim for ineffective assistance of counsel. (Dkt. No. 53.) The Court accepted this supplement nunc pro tunc as part of Petitioner's original § 2255 motion.

1

## I. BACKGROUND

On January 27, 2017, Petitioner was indicted on Count 1, distribution of methamphetamine, a Schedule II Controlled Substance, in violation of 21 U.S.C. § 841(a)(1); and Count 2, conspiracy to launder monetary instruments, in violation of 18 U.S.C. § 1956. (Dkt. No. 1.) On July 13, 2017, Petitioner pled guilty to Counts 1 and 2 of the indictment. (Dkt. No. 21.) Additionally, Petitioner executed a "Consent to Rule 11 Plea in a Felony Case" before Magistrate Judge William V. Gallo on July 13, 2017. (Dkt. No. 20.) On September 21, 2017, this Court accepted Petitioner's plea of guilty and sentenced Petitioner to 180 months in prison for Count 1, 120 months in prison, concurrently, for Count 2, and five years of supervised release on November 20, 2017. (Dkt. No. 25; 41.)

On November 30, 2017—ten days after sentencing—Petitioner filed the present motion to vacate under 28 U.S.C. § 2255 based on alleged ineffective assistance of counsel for failure to file motions in state court pursuant to Prop 47, failure to adequately explain the plea agreement, and refusal to let Petitioner consult his family. (Dkt. No. 42 at 4-5, 9.) Petitioner further asserted that points were wrongfully added to his criminal record for possession of a firearm and possession of a controlled substance. (*Id.* at 6-7.) On December 7, 2017, this Court found that Petitioner had waived the attorney client privilege as to communications related to his attorney Greg Obenauer's alleged ineffective assistance of counsel, and ordered discovery as to these issues. (Dkt. No. 47.) On January 16, 2018, Petitioner filed a supplemental document in support of his ineffective assistance of counsel claim, alleging that counsel failed to calculate the advisory guidelines correctly, pressured Petitioner to "plea to something more severe," and failed to inform Petitioner of "the new P.S.R. that was different." (Dkt. No. 53.) The Government filed a response in opposition on January 25, 2018, urging the Court to deny Petitioner's motion with prejudice and decline to hold an evidentiary hearing or issue a certificate of appealability. (Dkt. No. 54.)

## II. LEGAL STANDARD

### A. Motion to Vacate Sentence

Section 2255 authorizes this Court to "vacate, set aside, or correct the sentence" of a federal prisoner on "the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). To warrant relief under § 2255, a prisoner must allege a constitutional or jurisdictional error, or a "fundamental defect which inherently results in a complete miscarriage of justice [or] an omission inconsistent with the rudimentary demands of fair procedure." *United States v. Timmreck*, 441 U.S. 780, 783 (1979) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)).

### B. Ineffective Assistance of Counsel

A defendant claiming ineffective assistance of counsel ("IAC") must show both (1) deficient performance under an objective standard of reasonableness and (2) prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To demonstrate deficient performance, "[t]he challenger's burden is to show 'that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'" *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 687). To demonstrate prejudice, the petitioner must show that "but for counsel's unprofessional errors," there is a reasonable probability "the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694 ("A reasonable probability is a probability sufficient to undermine confidence in the outcome."); *see Richter*, 562 U.S. at 112 ("The likelihood of a different result must be substantial, not just conceivable."). A petitioner must allege specific facts—not conclusory allegations—to warrant relief. *See. e.g.*, *James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994) ("Conclusory allegations of [IAC] which are not supported by a statement of specific facts do not warrant habeas relief.").

3

Furthermore, reviewing courts must apply a "strong presumption" that "counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689; *see Cullen v. Pinholster*, 563 U.S. 170, 196 (2011) (courts must give "attorneys the benefit of the doubt" for proceeding as they did).

"Because failure to meet either [*Strickland*] prong is fatal to [an IAC] claim, there is no requirement that we 'address both components of the inquiry if the defendant makes an insufficient showing on one.'" *Gonzalez v. Wong*, 667 F.3d 965, 987 (9th Cir. 2011) (quoting *Strickland*, 466 U.S. at 697); *see Bell v. Cone*, 535 U.S. 685, 695 (2002) ("Without proof of both deficient performance and prejudice to the defense . . . the sentence or conviction should stand.") (citation omitted). As such, the court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Strickland*, 466 U.S. at 697.

## III. DISCUSSION

For the following reasons, the Court finds that Petitioner's claims do not warrant federal relief under § 2255. The Court also finds that an evidentiary hearing is not necessary or warranted, as the issues can be conclusively decided on the basis of the existing record, and that Petitioner has not satisfied the requirements for issuance of a certificate of appealability.

### A. Ineffective Assistance of Counsel

In his claim for ineffective assistance of counsel, Petitioner argues that he did not understand his guilty plea, was forced to plead guilty, and was denied the opportunity to speak with his family about his case. (Dkt. No. 42 at 4-5.) Petitioner further alleges that counsel failed to file motions in state court pursuant to Prop 47 and failed to calculate the advisory guidelines correctly, which pressured him to plead guilty to "something more severe." (Dkt. No. 53.) The Government contends that counsel adequately explained the

4

17-cv-2411-GPC;
17-cr-00215-GPC

plea agreement, did not interfere with Petitioner's family communications, and that there is no evidence that counsel "pressured" Petitioner to plead guilty. (Dkt. No. 54 at 7-9.)

> *1.     Petitioner's Involuntariness Claim is Unsupported by the Record*

As to Petitioner's involuntariness claim, Rule 11 of the Federal Rules of Criminal Procedure provides that courts must address a criminal defendant personally and in open court to ensure that the plea is voluntary and not caused by force threats or other promises (beside promises included in the Plea Agreement). Fed. R. Crim. P. 11. Under *Boykin*, the trial judge must make an affirmative finding that a plea of guilty is intelligent and voluntarily. *Boykin v. Alabama*, 395 U.S. 238, 240 (1969). Furthermore, a defendant must have a sufficient present ability to consult a "lawyer with a reasonable degree of rational understanding" and have a "rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402 (1960) (per curiam). In this case, the Court satisfied these requirements and Petitioner had numerous opportunities to consult with both his attorney and family about the proceeding against him. As such, the Court finds Petitioner's involuntariness claim unsupported by the record.

First, the Court notes that Petitioner initialed each page of his plea agreement, which states, in pertinent part:

**<u>Defendant's Representation that Guilty Plea is Knowing and Voluntary</u>**

Defendant represents that:

A.  Defendant has had a full opportunity to discuss all the facts and circumstances of this case with defense counsel and has a clear understanding of the charges and the consequences of this plea.
B.  No one has made any promises or offered any rewards in return for this guilty plea, other than those contained in this agreement or otherwise disclosed to the Court.
C.  No one has threatened Defendant or Defendant's family to induce this guilty plea.
D.  Defendant is pleading guilty because Defendant is guilty and for no other reason.

(Dkt. No. 21 at ¶ VI.) Moreover, Petitioner was addressed personally in open court before U.S. Magistrate Judge William V. Gallo on July 13, 2017 to discuss his change of plea. (Dkt. No. 54-3.) The record reflects that at his change of plea hearing, Petitioner stated before Magistrate Judge Gallo that he wished to withdraw his former plea of "not guilty" to "guilty" on Counts 1 and 2 of the indictment. (Dkt. No. 54-3 at 4.) The plea colloquy then transpired as follows:

> THE COURT: Gentlemen, your attorney has provided me with two documents. The first is your consent to plead guilty before me. I am a magistrate judge. You do have the right to plead guilty before the district judge assigned to your case. You can waive that right, however, if you want, and plead guilty here. Have you discussed this matter with your attorney, to plead guilty before me, and is this what you want to do?
>
> THE COURT: Mr. Rodriguez?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Counsel, do each of you concur with your client's consent?
>
> MR. OBENAUER: Yes.
>
> THE COURT: All right, gentlemen. Now we are going to get into the meat of this, and it is your plea agreement. I have reviewed your plea agreement, and I see what appear to be your initials and your signature on this document. Are these in fact your initials and signature in the plea agreement?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Before you signed and initialed the plea agreement, did you read it over carefully or have it translated and read to you so you could understand it?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Have you had sufficient time to review the agreement and also the facts of your case with your attorney and have all your questions answered?

THE DEFENDANT: Yes, sir.

THE COURT: Do you understand all the terms and conditions in the plea agreement?

THE DEFENDANT: Yes, sir.

THE COURT: And are you satisfied with the advice your attorney has given you?

THE DEFENDANT: Yes.

(Dkt. No. 54-3 at 6-8.) The record thus reflects that Petitioner was addressed in open court before Magistrate Judge Gallo to ensure that the plea was voluntary and not caused by threats or other promises. *See* Fed. R. Crim. P. 11. Furthermore, the record demonstrates that Counsel believed that Petitioner understood the terms of the agreement and that the plea of guilty was in the best interest of Petitioner. (*See* Dkt. Nos. 54-3 at 8; 54-2 at 2.) The Court finds no reason to believe that Petitioner did not have the present ability to have a reasonable degree of understanding of the proceedings against him.[2]

### 2. *Petitioner Fails to Support his Claims of Being "Pressured" With Specific Facts*

As to Petitioner's claims that he was pressured into pleading guilty and denied the opportunity to speak with his family, Petitioner fails to provide the specific facts necessary under *Strickland*.[3] *See Borg*, 24 F.3d at 26 (noting that conclusory allegations do not warrant relief for an IAC claim). Petitioner's failure to allege specific facts is all the more fatal when facts contained in the record directly *refute* both of his claims. The record indicates that Petitioner's counsel, Gregory D. Obenauer, carefully reviewed the plea

---

[2] Petitioner does not assert that he did not have a factual understanding of the proceedings against him.
[3] In asserting that he was pressured into pleading guilty, Petitioner conclusively stated: "My lawyer did not tell me what I was signing. I did not understand what I was pleading guilty to." (Dkt. No. 42 at 4.) In asserting that he was denied the opportunity to talk to him family, Petitioner stated: "[My lawyer] also did not give me any time to talk to my family about my case." (*Id.*)

7

agreement with Petitioner. (Dkt. No. 54-1 at 3.) In his Declaration to the Court, Mr. Obenauer stated that he met with Petitioner "at least 14 times, 7 of those meetings with [his] investigator." (*Id.*) Mr. Obenauer also stated, under penalty of perjury, that he "devoted substantial time to the plea agreement and gave [Petitioner] time to think about it." (*Id.*) On the day Petitioner signed the plea agreement, Mr. Obenauer "took special care to read the agreement slowly and repeated key paragraphs." (*Id.*) Additionally, Mr. Obenauer declared that he "made two phone calls to [Petitioner's] wife i.e. two conversations with his wife, and never interfered with his communication with his family." (*Id.*) In the absence of specific facts to the contrary, this Court finds that Mr. Obenauer's conduct fell "within the wide range of reasonable professional assistance," and as such, Petitioner is not entitled to federal relief as he has not demonstrated deficient performance.[4] *See Strickland*, 466 U.S. at 689.

### 3. *Petitioner Suffered No Prejudice as a Result of Counsel's Allegedly Deficient Performance*

Finally, Petitioner alleges that counsel performed deficiently by refusing to file motions in state court to reduce a felony to a misdemeanor, failing to fix a miscalculation in the plea agreement, and failing to inform Petitioner of "the new P.S.R." (Dkt. Nos. 42 at 4; 53 at 3.) Petitioner contends that if his lawyer were to have calculated the advisory guidelines correctly, Petitioner might have plead differently. (Dkt. No. 53 at 3.) As argued by the Government, "even if this claim were true, Rodriguez suffered no prejudice because the error was corrected at the time of sentencing. . . ." (Dkt. No. 54 at 9.) The Government further notes that it is "unclear" what Petitioner is referring to when he references the "new P.S.R.," but similarly asserts that "Rodriquez suffered no prejudice, and therefore, his claim fails." (Dkt. No. 54 at 10.)

---

[4] Because Petitioner failed to show deficient performance under the first prong of *Strickland*, this Court need not consider the second prong—prejudice—as it applies to this claim. *See Wong*, 667 F.3d at 987 (restating that there is no requirement for a court to address both components if a defendant makes an insufficient showing on one).

8

Petitioner's first claim relies upon Mr. Obenauer's alleged refusal to file motions pursuant to Prop 47 to reduce Petitioner's felony to a misdemeanor. Mr. Obenauer, however, has no recollection of "the conversation described by Mr. Rodriquez regarding the reduction of felonies to misdemeanors." (Dkt. No. 54-1 at 3.) Furthermore, Mr. Obenauer "suggested an option to reduce [Petitioner's] sentence but [Petitioner] declined that option." (*Id.*) Even if Mr. Obenauer *had* filed the motions in state court, Petitioner has provided no evidence that this would have made a difference at sentencing. Rather, the Ninth Circuit has held that the Sentencing Guidelines looks to a defendant's status *at the time* he commits the federal crime. *United States v. Yepez*, 704 F.3d 1087, 1090 (9th Cir. 2012) (determining that "[s]tate courts cannot be given the authority to change a defendant's federal sentence by issuing a ruling that alters history and the underlying facts"); *see also United States v. Alba-Flores*, 577 F.3d 1104, 1111 (9th Cir. 2009) (when determining whether a federal defendant is under a criminal justice sentence, "[i]t is the actual situation at th[e] precise point in time" that the crime was committed that controls, "not the situation at some earlier or later point"). Given this precedent, Mr. Obenauer is correct in his assertion that "such motions would not have reduced his criminal history category." (Dkt. No. 54-1 at 2.)

Petitioner's next claim relies upon a miscalculation of his offense level contained in the plea agreement. In the plea agreement, the parties jointly recommended a total offense level of 39. (Dkt. No. 21 at ¶ X.) This calculation was also recommended by a U.S. Probation Officer in the Presentence Report filed on August 24, 2017. (Dkt. No. 23 at 10.) Both the plea agreement and the U.S. Probation Officer included a six-level enhancement pursuant to § 2S1.1(b)(1)(B). (Dkt. Nos. 21 ¶ X; 23 at 10.) "Based upon the total offense level of 39, and a Criminal History Category V, the guideline imprisonment range is 360 months to life." (Dkt. No. 23 at 27.) Upon receiving new information, the Probation Officer filed a guideline correction on November 9, 2017 stating that the six-level enhancement was not applicable to Petitioner's sentence, thereby reducing his total offense

9

level to 33. (Dkt. No. 31 at 1.) The advisory guideline range for that offense level is 210 to 262 months—a noticeably lower sentence than that of a level 39 offense. (*Id.*)

While this discrepancy may have changed Petitioner's advisory guideline range for sentencing, the correction was issued *before* sentencing and was acknowledged by the Court and all parties in a timely manner, and the alleged error did not result in prejudice such that relief is warranted.

First, the error was corrected in a timely manner. The U.S. Probation Office filed a guideline correction on November 9, 2017—well before the Court entered a judgment as to Petitioner's sentence. (Dkt. No. 31.) Additionally, both parties acknowledged the discrepancy and incorporated the corrected offense level into their Sentencing Memoranda. In its Sentencing Memorandum filed on November 9, 2017, the Government categorized Petitioner's total offense level as 33 and recommended 180 months in prison for Count 1, and 120 months in prison, concurrently, for Count 2. (Dkt. No. 32 at 3, 7.) Mr. Obenauer similarly acknowledged that Petitioner's revised total offense level was 33, and accordingly recommended the minimum mandatory (120 months) in his Sentencing Memorandum filed on November 10, 2017. (Dkt. No. 34 at 5.) Furthermore, the Court recognized that Petitioner's adjusted offense level was 33 in a criminal history category V, "producing an advisory sentencing guideline range of 210 to 262 months." (Dkt. No. 54-4 at 5.) Thus, the Court and all parties agreed *prior* to final sentencing that the correct calculation of Petitioner's offense level was 33.

Next, Petitioner did not suffer the distinctive kind of "prejudice" required for an IAC claim as a result of this initial miscalculation. To meet his burden of showing "prejudice" under *Strickland*, a petitioner must affirmatively "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Hebner v. McGrath*, 543 F.3d 1133, 1137 (9th Cir. 2008) (citing *Strickland*, 466 U.S. at 688). Here, Petitioner has failed to demonstrate that absent the initial miscalculation of his total offense level, his sentence would have been different.

10

Rather, the record suggests that the six-level discrepancy in Petitioner's total offense level did not play a determinative role in the Government's recommendation or the Court's ultimate sentence.

In determining Petitioner's sentence, the Court relied on, in part, the Government's sentencing recommendation, noting that "the Court is of the view that the recommendations of both the probation office and the government are measured. They are fair." (Dkt. No. 54-4 at 15.) In Petitioner's plea agreement, the Government recommended 180 months in prison for Count 1, and 120 months in prison, concurrently, for Count 2—despite the categorization of Petitioner's offense level as 39, which includes a sentencing guideline range of 360 months to life. (Dkt. No. 21 at ¶ X.) Upon discovering the discrepancy in Petitioner's total offense level, the Government's recommended sentence **remained unchanged**. (*See* Dkt. No. 32 at 7.) This indicates that the six-level decrease in Petitioner's total offense level did not influence the Government's recommendation or the Court's ultimate sentence, which was based on a variety of factors, pursuant to 18 U.S.C. § 3553. (Dkt. No. 54-5 at 14.) Petitioner has provided no evidence to the contrary.

Moreover, Petitioner claims that had he known that his correct offense level was 33 and the correlating advisory guidelines, he might have "plead different to a charge of something not so severe." (Dkt. No. 53 at 3.) Here, Petitioner's claim is purely speculative and Petitioner fails to overcome his burden to show that but for his counsel's alleged deficient performance that he would have changed the outcome of his sentencing. As stated above, the government's sentencing recommendation did not change even in spite of the six level error. Moreover, Mr. Obenauer stated in his sworn declaration that "[t]he government case was so strong that it made a trial impossible for Mr. Rodriguez," indicating that Petitioner was unlikely to have been successful if the case would have gone to trial. (Dkt. No. 54-1 at 3.) Petitioner has thereby failed to demonstrate prejudice, or otherwise show how his unwillingness to accept the plea agreement based on a calculation error might have resulted in a different outcome.

11

Accordingly, the Court **DENIES** Petitioner's motion to vacate his federal sentence under § 2255 with prejudice.

### B. Waiver of Appeal and Collateral Attack

In addition to his ineffective assistance of counsel claim, Petitioner appeals his sentence on grounds that he incorrectly received criminal history points for prior convictions for unlawful possession of ammunition and possession of a controlled substance, labeled as Grounds Two and Three in his § 2225 motion. (Dkt. No. 42 at 6, 7.) Furthermore, Petitioner seeks relief based upon his Prop 47 request to reduce his felony to a misdemeanor, labeling as Ground Four in his § 2225 motion. (*Id.* at 9.) This Court need not address the merit of these claims, as Petitioner unequivocally waived his right to appeal and collaterally attack his sentence in his plea agreement.

"'Plea agreements are contractual in nature and are measured by contract law standards.'" *United States v. Keller*, 902 F.2d 1391, 1393 (9th Cir. 1990) (quoting *United States v. Read*, 778 F.2d 1437, 1441 (9th Cir. 1985)). "A defendant's waiver of his appellate rights is enforceable if the language of the waiver encompasses his right to appeal on the grounds raised, and if the waiver was knowingly and voluntarily made." *United States v. Joyce*, 357 F.3d 921, 922 (9th Cir. 2004). *See also United States v. Abarca*, 985 F.2d 1012, 1014 (9th Cir.1993) (holding that a defendant may waive the right to collateral review). The court "looks to the circumstances surrounding the signing and entry of the plea agreement to determine whether the defendant agreed to its terms knowingly and voluntarily." *United States v. Baramdyka*, 95 F.3d 840, 843 (9th Cir. 1996). The court "must also focus [sic] upon the language of the waiver to determine its scope." *Id.* "[W]hether the district court informed the defendant of [his] appellate rights and verified [his] intent to forfeit them" is also relevant. *United States v. Anglin*, 215 F.3d 1064, 1066 (9th Cir. 2000). An appeal waiver is unenforceable "if: 1) a defendant's guilty plea failed to comply with Fed. R. Crim. P. 11; 2) the sentencing judge informs a defendant that [he] retains the right to appeal; 3) the sentence does not comport with the terms of the plea

12

agreement; or 4) the sentence violates the law." *United States v. Bibler*, 495 F.3d 621, 624 (9th Cir. 2007) (citations omitted).

Here, Petitioner entered into a plea agreement with the Government. (Dkt. No. 21.) According to the terms of the plea agreement, Petitioner waived his rights to appeal and collateral attack. Specifically, the plea agreement stated:

> Defendant waives (gives up) all rights to appeal and to collaterally attack every aspect of the conviction and sentence, including any restitution order. The only exceptions are 1) Defendant may appeal a custodial sentence above the high end of the guideline range recommended by the Government at sentencing (if USSG § 5G1.1(b) applies, the high end of the range will be the statutorily required mandatory minimum sentence), and 2) Defendant may collaterally attack the conviction or sentence on the basis that Defendant received ineffective assistance of counsel. If Defendant appeals, the Government may support on appeal the sentence or restitution order actually imposed.

(*Id.* at ¶ XI.) Furthermore, Petitioner represented that the plea agreement was knowing and voluntary, that he had "discussed the terms of this agreement with defense counsel and fully understands its meaning and effect," and that he "consulted with counsel and is satisfied with counsel's representation." (*Id.* at ¶¶ VI, XIV, XV.) Petitioner initialed each page of the Plea Agreement and signed the final page under penalty of perjury. (*Id.*) Furthermore, as discussed above, Petitioner was addressed in open court, pursuant to Fed. R. Crim. P. 11. In addition, Magistrate Judge Gallo advised Petitioner of the specific rights waived with a guilty plea. (Dkt. No. 54-3 at 13-14.) ("Each of you has a provision in your plea agreement wherein you have waived your right to appeal or to collaterally attack your conviction and sentence under certain conditions and circumstances.")

Petitioner's plea agreement is enforceable because the surrounding circumstances, as discussed above, indicate the plea agreement was made knowingly and voluntarily. The plea agreement contained separate sections specifically addressing the knowing and voluntary nature of Petitioner's guilty plea and his waiver of appeal and collateral attack.

13

(Dkt. No. 21 at ¶ VI, XI.) Petitioner signed the plea agreement and initialed each page. (*Id.* at 1–18.) Petitioner also confirmed these facts at his plea hearing before Magistrate Judge Gallo and affirmed that no one forced or threatened him into pleading guilty or signing the plea agreement. (Dkt. No. 54-3 at 15–16.) Additionally, Petitioner was sentenced in accordance with the terms of the plea agreement and the sentencing court confirmed with Petitioner that he had waived his right to appeal. (See Dkt. Nos. 21, 41; Dkt. No. 54-4 at 18.) In sum, there is no indication, and Petitioner does not contend, that he did not knowingly and voluntarily enter the plea agreement and understand its effect. Moreover, Petitioner specifically acknowledged, before Magistrate Judge Gallo, that he had waived his right to appeal and collaterally attack his conviction. (Dkt. No. 54-3 at 14.)

Thus, this Court finds Petitioner is bound by the terms of the plea agreement and has waived his right to appeal or collaterally attack the sentence imposed by this Court. Therefore, the Court **DENIES** Petitioner's motion to vacate, set aside, or correct sentence on Grounds Two, Three, and Four with prejudice.

## C. Evidentiary Hearing

"Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief," the Court must hold an evidentiary hearing on the merits of a § 2255 motion. 28 U.S.C. § 2255(b). However, a district court may deny a § 2255 motion without an evidentiary hearing. *United States v. Rodrigues-Vega*, 797 F.3d 781, 791 (9th Cir. 2015). An evidentiary hearing is unnecessary if the allegations, "when viewed against the record, do not state a claim for relief or are so palpably incredible or patently frivolous as to warrant summary dismissal." *United States v. Leonti*, 326 F.3d 1111, 1116 (9th Cir. 2003) (internal quotation marks omitted).

Here, the existing files and records—which include the signed plea agreement, the official transcripts of the change of plea and sentencing hearings, and a sworn declaration from Mr. Obenauer as to the extent of the communications surrounding the alleged ineffective assistance, the advice of counsel, and any discussions regarding counsel's

14

actions or inactions—conclusively show that Petitioner is not entitled to relief. (Dkt. Nos. 21, 44, 45, 47, 54.) Accordingly, the Court finds that Petitioner's claims do not merit an evidentiary hearing.

### D.     Certificate of Appealability

To appeal a district court's denial of a § 2255 petition, a petitioner must obtain a certificate of appealability. 28 U.S.C. § 2253(c)(1)(A). A district court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2). To satisfy this standard, the petitioner must show that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In this case, Petitioner has failed to provide sufficient facts to demonstrate that counsel was ineffective and as a result, Petitioner was prejudiced, in violation of his Sixth Amendment rights. Moreover, the record conclusively supports a finding that Petitioner did knowingly and voluntarily enter the plea agreement and understand its effect.

Therefore, the Court finds that reasonable jurists would not find this Court's dismissal of Rodriguez's claims debatable. Accordingly, the Court declines to grant Petitioner a certificate of appealability.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 with prejudice. The Court also **DENIES** Petitioner's request for an evidentiary hearing and a certificate of appealability.
**IT IS SO ORDERED.**

Dated: April 12, 2018

Hon. Gonzalo P. Curiel
United States District Judge

15

17-cv-2411-GPC;
17-cr-00215-GPC